*1118TEXTO COMPLETO DE LA SENTENCIA
Comparece ante este Foro, doña Maritza Rodríguez Ortiz (Rodríguez) mediante un recurso de certiorari presentado en 3 de enero de 2003, solicitando la revisión y revocación de una Resolución dictada por el Tribunal de Primera Instancia, Sala Superior de Caguas, en 12 de noviembre de 2002 y archivada en autos en 2 de diciembre de 2002. Mediante el referido dictamen, se declaró NO HA LUGAR una moción solicitando nulidad de sentencia que fuera presentada por Rodríguez, bajo el fundamento de cosa juzgada. (Certiorari, Apéndice págs. 55-58)
Analizado el legajo ante nuestra consideración, así como los autos originales ante el foro de instancia, y por los fundamentos que exponemos a continuación, vamos más lejos del pedido de la recurrente, y no sólo revocamos la resolución recurrida, sino que además declaramos nula e ineficaz la sentencia que dictara el Tribunal de Primera Instancia en 7 de diciembre de 1997.
I. Trasfondo Fáctico y Procesal
Laboratorio Clínico Tropical (Laboratorio), en 16 de septiembre de 1996, presentó una demanda en cobro de dinero, incumplimiento de contrato y daños y perjuicios contra Carlos M. Williams García (Williams), Maritza Rodríguez Ortiz (Rodríguez) y una inexistente Sociedad Legal de Gananciales por ellos compuesta. Se fundó el referido recurso en las siguientes alegaciones:

“A los demandados, la demandante, el 25 de junio de 1996, le entregó dos máquinas de análisis para procesar pruebas de química valoradas en $16,500.00, con el propósito de entregarlas a un cliente venezolano (comprador) quien las recogería en Puerto Rico durante los próximos días siguientes a su recibo.

Los demandados se han negado y se niegan obstinada e intencionalmente a cumplir con su obligación de devolver las referidas máquinas o a entregar en metálico el importe de su valor, a pesar de las múltiples gestiones efectuadas por la demandante.

Los referidos equipos al momento de la entrega, se encontraban en perfecto estado de funcionamiento, produciendo resultados de laboratorio, privándose la demandante de su producción económica debido al incumplimiento del demandado, y además de la adquisición de equipo adicional necesario para la operación de su negocio.

El incumplimiento de los demandados está causando y ha causado a la demandante hasta la fecha daños y perjuicios...

...”. (Certiorari, Apéndice págs.1-2).
Junto a la demanda, fue presentada una "Moción Solicitando Aseguramiento de Sentencia", la cual consta en los autos originales del caso, en la que se solicita al Tribunal de Primera Instancia que expida orden al Registrador de la Propiedad de Puerto Rico para que anote la orden de aseguramiento de sentencia, en este caso el embargo, que pueda dictarse en el caso al margen de la siguiente propiedad:
“URBANA: Solar C-21, radicado en la Urbanización Mansiones de Bairoa en el Barrio Bairoa de Caguas, con una cabida de 443.577 metros cuadrados en lindes por el Norte, en 27.975 metros con el solar número 22 *1119del bloque C; Sur, en 28.406 metros con el solar número 20-C; Este, en 15.750 metros qon la Calle número 2 de dicha urbanización y Oeste, en 2 alineaciones distintas, una de 14.302 metros y oiftx de 1.455 metros con terrenos de la Urbanización Bairoa Golden Gate I. Enclava una casa de concreto. Inscrito alfolio 10 del tomo 1430 de Caguas, finca número 40.503, inscripción primera." 
En ningún momento, el abogado de los demandantes señaló en la descripción registral a \a persona o personas que figuraban como titulares de la propiedad, al momento de solicitarse el embargo.
Atendida la moción solicitando aseguramiento de sentencia, el foro recurrido, por voz del Hon. José 0-Resto Huertas, dictó Orden en 18 de septiembre de 1996, en la que señaló vista para el 8 de octubre de 1996, apercibiéndole a la parte demandada que, de no comparecer a la vista, el Tribunal concedería el remedio solicitado.
Según los emplazamientos que obran en los autos originales, tanto Williams como Rodríguez, fueron ■ emplazados en 24 de septiembre de 1996 a las 8:15 de la mañana, habiendo entregado los emplazamientos personalmente el diligenciante, José Stalin Roldán. (Certiorari, Apéndice págs.3-4)
Como parte de una moción solicitando nulidad de sentencia presentada por Rodríguez, se incluyó como Exhibit 1 una declaración jurada prestada por ésta, en la que hace constar que ésta nunca fue emplazada personalmente porque el día y la hora del alegado diligenciamiento del emplazamiento se encontraba trabajando en la empresa San Lucas Home Care localizada en Cayey, Puerto Rico, en el cual había entrado desde las 7:00 a.m. (Certiorari, Apéndice pág. 5 y Autos Originales)
A este hecho en particular haremos referencia más adelante.
En 3 de octubre de 1996, el codemandado, Williams presentó una Moción por derecho propio, en manuscrito, en la que solicita del Tribunal una prórroga para contestar demanda debido a que no había conseguido representación legal. Además, informa al foro recurrido lo siguiente:
“Comparece la parte demandante (sic) por derecho propio, y muy respetuosamente expone y solicita:

Una proroga (sic) del caso en el sentido que el demandante temerariamente me demandó y que lo expuesto (sic) en la demanda es falso y como el demandante fue Juez de Caguas, el Lie. Ríos no consiguió un abogado que me represente y mi domicilio es en Fajardo, no entiendo porqué no puede verse el caso en una sala neutral. Por favor.

Nota: Carlos M. Williams s/s 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 casado con Jenny Rosario Vega.

Le solicito una proroga (sic) para conseguir un abogado que me represente.

Caguas, Puerto Rico, a 3 de octubre de 1996.

(Fdo.)

Carlos M. Williams

Jerusalem Calle 5 F16

Fajardo, P.R.”

(iCertiorari, Apéndice pág. 8)
El lego Carlos Williams, le estaba dando tres razones de peso al tribunal para que el Juez reaccionara y *1120tomara medidas cautelares en el caso:

“Uno, estaba levantando defensa de falsedad de las alegaciones; dos, le estaba diciendo al tribunal que su "domicilio" es en Fajardo; y tres, le estaba diciendo al tribunal que era casado con Jenny Rosario Vega, no con Mañiza Rodríguez Ortiz, por lo que no podía existir la sociedad de gananciales que se estaba demandando ante el tribunal. ”

La vista sobre discusión de la Moción Solicitando Aseguramiento de Sentencia fue celebrada según señalada en 8 de octubre de 1996. El tribunal recurrido tuvo ante sí la moción por derecho propio de Carlos Williams, pues el sello de presentación ante el tribunal es de 3 de octubre de 1999. Sin embargo, no es hasta el 8 de octubre de 1999, luego de la vista celebrada, que el tribunal resuelve con un lacónico "Véase minuta".
Se indica en la Minuta, que compareció la parte demandante representada por su abogado, Ledo. Roberto L. Varela Muñiz, y "...laparte demandada sin representación legal."
En lo pertinente, citamos de la minuta lo siguiente:

“Llamado el caso nuevamente, estaba presente el licenciado Varela. Compareció la parte demandada sin representación legal.

A preguntas del Tribunal, el licenciado Varela informó que dialogó con los demandados, pero brevemente.

El Tribunal expresó que la Vista de hoy no era el juicio y sí para considerar una solicitud del demandante de un remedio provisional, lo cual se podía resolver sin la celebración de Vista.

El demandado informó que entendió. Manifestó su preocupación de que se incluyera en la Demanda a Maritza Rodríguez Ortiz, debido a que ellos tienen hijos, pero no están casados. Informó además, que no ha podido conseguir abogado, pero que radicó Moción por derecho propio.

El Tribunal expresó que la misma surge de autos y que daría instrucciones al respecto.

Las partes y el licenciado Varela se acercaron al estrado.

Luego de ello, el Tribunal concedió un turno posterior.

Llamado el caso nuevamente, estaban las partes presentes.

El Tribunal ordenó que se juramentara al demandante, para usar prueba sobre un incidente interlocutorio procesal, y no estaba resolviendo si procedía o no la Demanda; que los demandados estaban sin abogado; que les concedió un término de 30 días a partir de hoy, para contestar la Demanda y hacer cualquier planteamiento a través de su representación legal.

Se procedió a escuchar la prueba testifical de la parte demandante con el siguiente testigo:

Sr. Ramón A. Ríos Camacho

El demandado informó que el equipo se dañó y trató de repararlo,¡ que iba a conseguir el dinero para llevarlo, que tenía el otro equipo en su poder, que reparó ambos equipos y que uno lo tenía él y el otro estaba en Arecibo.

*1121
El Tribunal le advirtió que de no contestar la Demanda en el término concedido, se le podrá anotar Rebeldía.

Sometido el incidente, el Tribunal resolverá.

El licenciado Varela solicitó someter la Declaración Jurada del demandado.

El Tribunal expresó que sería para determinar si procede o no lo solicitado.

El demandado informó que no tenía una dirección de residencia fija. ”

En dicha vista, y según surge de la referida Minuta, sucedió lo siguiente:
Uno, el Sr. Williams manifestó al Juez Resto Huertas su preocupación de que Rodríguez fuera incluida como parte en la demanda, toda vez que, a pesar de que tienen hijos en común, no se encontraban casados.
Dos, informó que no había podido conseguir abogado, y presentó moción por derecho propio, y el tribunal expresó que "la misma surge de autos", por lo que vió la moción de Williams.
Tres, el tribunal permitió que Williams se expresara sobre los equipos, que los reparó y que tenía uno y el otro estaba en Arecibo, estando éste sin abogado y en estado de indefensión.
Cuatro, dice la minuta que "el demandado informó que no tenía dirección de residencia fija", pero el tribunal tenía una moción de Williams en que hace constar que residía en " Jerusalem, Calle 5 F16, en Fajardo, P.R."
Cinco, Williams apercibió al tribunal y al Ledo, Varela -quien "dialogó con los demandados, pero brevemente", según la minuta- que él y Maritza Rodríguez Ortiz tenían hijos, pero no estaban casados, significando con ello que se estaba demandando a una sociedad legal de gananciales inexistente, por lo que era imperativo detener, en aquella etapa el despojo de propiedad.
A pesar de que en la Minuta se hace referencia a la "parte demandada" no surge que Rodríguez haya comparecido a la vista, pues sólo se hace referencia a "el demandado". Además, se le concedió un plazo de treinta (30) días a la parte demandada para comparecer con su representación legal y contestar la demanda. {Certiorari, Apéndice, págs. 9-10)
Según surge de los autos originales, en 8 de octubre de 1996, el Tribunal de Primera Instancia expidió "Orden de Anotación de Embargo", en la que se declaró HA LUGAR la moción de aseguramiento de sentencia presentada por Laboratorio, y se ordena al Registro de la Propiedad, que anotara al margen de la propiedad que se describa a continuación, el embargo a favor de la aquí recurrida, por la cantidad de $36,500.00:

“URBANA: Solar C-21, radicado en la Urbanización Mansiones de Bairoa en el Barrio Bairoa de Caguas, con una cabida de 443.577 metros cuadrados en lindes por el Norte, en 27.975 metros con el solar número 22 del bloque C; Sur, en 28.406 metros con el solar número 20-C; Este, en 15.750 metros con la Calle número 2 de dicha urbanización y Oeste, en 2 alineaciones distintas, una de 14.302 metros y otra de 1.455 metros con terrenos de la Urbanización Bairoa Golden Gate I. Enclava una casa de concreto. Inscrita alfolio 10 del tomo 1430 de Caguas, finca número 40.503, inscripción primera.” 

El correspondiente mandamiento fue expedido en 29 de octubre de 1996.
*1122El 21 de noviembre de 1996, a solicitud de la parte demandante, se le anotó la rebeldía a los demandados por no haber contestado la demanda y se señaló vista para el día 17 de diciembre de 1996 mediante Orden, en la que, según surge de la notificación de la misma, sólo fue notificada al co-demandado Williams y al Ledo. Roberto Varela Muñiz, representante legal de Laboratorio.
En 17 de diciembre de 1996 tuvo lugar la vista en su fondo. Según surge de la Minuta, a dicha vista compareció la parte demandante representada por su abogado, y la parte demandada comparece sin representación legal. A pesar de que en la referida minuta se hace referencia a “laparte demandada”, no surge que doña Maritza Rodríguez haya tenido participación alguna en dicha vista, pues sólo se hace referencia a "el demandado". (Certiorari, Apéndice, págs.18-19)
En 7 de enero de 1997, el Tribunal de Primera Instancia emite "Relación del caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia", notificada en 22 de enero de 1997. Mediante la misma se declara con lugar la demanda presentada y se condenó a los demandados, Willians y Rodríguez, solidariamente al pago de la suma de diez mil dólares ($10,000.00) por concepto de ganancia acordada, veinte mil dólares ($20,000.00) en concepto de daños y perjuicios, incluyendo intereses, mas las costas y los gastos del litigio. {Certiorari, Apéndice págs. 11-17)
En 27 de abril de 1998, Laboratorio Clínico presentó escrito titulado "Ejecución de Sentencia”, en el que informa al Tribunal que a esa fecha, los aquí recurrentes no habían pagado la suma que fueron condenados a pagar, por lo que solicitan que se dictara orden para que se expidiera mandamiento al Alguacil General para que a su vez, se expidiera un edicto de subasta. (Autos Originales)
En 27 de abril de 1998, el foro recurrido expidió "Orden de Ejecución de Sentencia", en la que se ordena la venta en pública subasta de la propiedad antes descrita a la pág. 3, la cual, según consta en el expediente y fuera informado al Tribunal de Primera Instancia, es propiedad privativa de Rodríguez. El correspondiente Mandamiento fue expedido al próximo día, 28 de abril. (Autos Originales)
La subasta pública fue celebrada el día 21 de septiembre de 1999 y según surge del Acta, la propiedad subastada fue adjudicada a Laboratorio Clínico Tropical, por la cantidad de cuarenta y un mil setecientos treinta dólares ($41,730.00). (Autos Originales)
En 7 de octubre de 1999, Rodríguez se acogió al procedimiento de quiebra bajo el Capítulo 13 del Código de Quiebras Federal, Caso Núm. 99-13873. (Autos Originales)
Luego de varios trámites procesales que resultan inmeritorio discutir, en 14 de junio de 2000, Laboratorio presentó "Moción en Solicitud de Orden de Lanzamiento", a lo que el Tribunal, luego de examinada la misma, dictó "Orden de Lanzamiento" en 19 de junio de 2000. (Autos Originales)
En 19 de junio de 2000, el Ledo. Varela presentó "Moción de Renuncia de Representación Legal", la cual fue autorizada mediante Resolución que a su vez, ordena la paralización de ejecución "...debido a la ausencia de jurisdicción sobre la materia." (Autos Originales)
En 11 de julio de 2000, Rodríguez se acogió al procedimiento de quiebras bajo el Capítulo 7 del Código de Quiebras Federal, Caso Núm. 00-08042. (Autos Originales)
Los aquí recurrentes, Williams y Rodríguez presentaron Demanda sobre "Nulidad de Actuaciones, Injunction y Daños y Perjuicios" con fecha de 16 de febrero de 2001, contra Laboratorio Clínico Tropical, José Ríos Pérez, su esposa Carmen Alicia Camacho y la Sociedad Legal de Gananciales compuesta por ambos, Ramón A. Ríos Camacho, su esposa, así como la Sociedad Legal de Gananciales por ambos compuesta. En *1123dicha demanda se planteó ante el Tribunal, la falta de notificación de la sentencia, defecto en el emplazamiento y la falta de jurisdicción sobre la persona de Rodríguez y la nulidad de la sentencia dictada en 7 de enero de 1997, entre otras cosas. (Certiorari, Apéndice págs.20-24)
En 21 de junio de 2001, el Tribunal de Primera Instancia dictó Sentencia en la que dispuso el archivo y desestimación de la demanda presentada por Williams y Rodríguez, al amparo de la Regla 39.2(a) de Procedimiento Civil. (Certiorari, Apéndice, pág. 25)
En 11 de septiembre de 2002, Rodriquez presentó "Moción Urgente Solicitando Nulidad de la Sentencia Dictada el 7 de 1997Archivada en Autos el 27 de enero de 1997por razón de Fraude al Tribunal y Solicitud de Anulación de Subasta". En la referida Moción, se informó al Tribunal, entre otras cosas lo siguiente:
• “Rodríguez Ortiz nunca fue emplazada en el caso de autos. El alegado diligenciamiento del emplazamiento de este caso de Maritza Rodríguez indica que la misma fue emplazada .en Caguas a las 8:15 A. M., cuando la realidad es que conforme la declaración jurada que con ésta se aneja, la compareciente sé encontraba en su trabajo en la empresa San Lucas Home Care localizada en Cayey, ... en el cual había entrado desde las 7:00 A.M. (Enfasis, nuestro.) 

• ...Rodríguez Ortiz advino en conocimiento de la reclamación ... cuando luego de regresar de su trabajo, ella encontró la copia de la demanda debajo de la entrada de su residencia. (Enfasis nuestro.)

• ...Rodríguez Ortiz es soltera y nunca se ha casado con el codemandado en este caso, Carlos Williams. Para la fecha de radicación del caso de marras este hecho era altamente, y es, conocido por la parte demandante en este caso... como por su representante en este caso... (Enfasis nuestro.)
• La esposa del codemandado Carlos Williams para la fecha de los hechos, era la Sra. Jenny Rosario Vega con residencia en ... Fajardo. Así le consta a la parte demandante en este caso. (Enfasis nuestro.)

• ...el Sr. Williams informó el nombre de su verdadera esposa al Tribunal sin que nada se hubiera hecho al respecto. Así surge de un escrito radicado por Williams el 3 de octubre de 1996 ... titulado "Moción" radicada por Derecho propio... (Enfasis nuestro.) 

• ...en la vista del caso señalada para la discusión de la Moción Solicitando Aseguramiento de Sentencia radicada por la parte demandante ...el Sr. Williams nuevamente volvió a llamar la atención al Tribunal en cuanto a que no estaba casado con Maritza Rodríguez. (Enfasis nuestro) 

[...]

Así lo reconoció el Tribunal cuando aceptó que la moción del 3 de octubre de 1996 constaba en los autos del caso. No obstante, y pesar de que el Tribunal, y citamos "...daría instrucciones al respecto". Este Honorable Tribunal nada hizo sobre el particular. (Enfasis nuestro.)
• Como consecuencia de lo antes expresado, Maritza Rodríguez continuó en el expediente de este caso como la "esposa" del Sr. Williams cuando en realidad al momento de la radicación de este caso y actualmente NUNCA se ha casado con el mismo. (Enfasis nuestro.)

• De la faz de las órdenes dictadas por este Honorable Tribunal surge la falta de notificación de las mismas a Maritza Rodríguez a tal grado que ni tan siquiera surge del récord del caso que obra en los autos del caso que sentencia dictada en este pleito le hubiere notificada. (Enfasis nuestro.) 

*1124• ...este Tribunal ordenó la ejecución de la Sentencia ... [ojrdenó la ejecución de. la Sentencia sobre un inmueble privativo propiedad de la Sra. Maritza Rodríguez en virtud de una Sentencia que según hemos establecido NUNCA le fue notificada. ” (Enfasis nuestro.) (Certiorari, Apéndice, pág.31-46)
En 23 de septiembre de 2002, Rodríguez presentó un escrito ante el foro recurrido en el que se hace referencia a las alegaciones contenidas en la moción solicitando nulidad de sentencia y además, se acompaña el original del certificado de matriñionio expedido por el Registro Demográfico en el cual consta el matrimonio constituido entre Williams y Jénny Rosario Vega, que ratifica el hecho de que Rodríguez no se encontraba casada con Williams al momento de radicarse la demanda del caso de marras, y por lo tanto no existía sociedad legal de gananciales entre ambos.
En 30 de septiembre de 2002, Laboratorio comparece mediante escrito titulado "Comparecencia Especial en Réplica a Mociones", en la que solicita al tribunal no considerar la solicitud presentada por Rodríguez por "...ser de su faz totalmente inmeritoria y frívola."
El Tribunal de Primera Instancia dictó Resolución en 12 de noviembre de 2002, notificada en 2 de diciembre del mismo año en la que se determina y resuelve lo siguiente:
• “Se plantea la falta de emplazamiento a Rodríguez y la falta de notificación de la sentencia.
• El demandante se opone señalando que lo planteado fue resuelto en una acción independiente en el caso EAC 2001-0071.
• La nulidad y declaración de invalidez de una sentencia por alegada transgresión al debido proceso de ley es una facultad que se reserva los tribunales bajo la Regla 49.2 (a) de Procedimiento Civil.

• Puede acudirse a una solicitud dentro del mismo pleito o a una acción independiente.

• Rodríguez presentó una demanda en 16 de febrero de 2001 ... Allí hizo planteamientos de falta de notificación de la sentencia, fraude al tribunal y defecto en el emplazamiento.

• Se solicitaban los mismos remedios bajo los mismos argumentos.

• La acción se desestimó.
• ...se presentó solicitud de Apelación ante el Tribunal de Circuito de Apelaciones. Ese distinguido foro revisor denegó la expedición del auto.
• Lo que allí se planteó es lo que se había pedido ante el Tribunal de Instancia.

• Después de recibido el mandato es que se acude con la petición que se pretende ahora.

• La promovente optó por presentar una acción independiente según tenía derecho.
• Habiéndose adjudicado y firme ya la determinación judicial, este tribunal carece de facultad para atender el pedido. (Enfasis nuestro.)
• ...se declara SIN LUGAR la solicitud. ” (Enfasis nuestro.) {Certiorari, Apéndice, págs. 55-58)
En 20 de noviembre de 2002, Laboratorio presentó "Moción Informativa al amparo de la Regla 51 de *1125Procedimiento Civil", en la que informa al Tribunal que interesa la ejecución de la sentencia, que fuera dictada en 7 de enero de 1997, conforme lo dispuesto en la Regla 51 de Procedimiento Civil. Por su parte Rodríguez presentó réplica en 21 de noviembre de 2002. Atendida la solicitud de ejecución de sentencia, el Tribunal de Primera Instancia dictó Orden en 3 de diciembre de 2002, en la que expone:
“Nada que proveer. Escrito poco informativo y sin base en las constancias del expediente judicial. Las órdenes se expidieron previamente. ” (Autos Originales)
Inconforme con la referida Resolución, Rodríguez presentó recurso de Certiorari en 3 de enero de 2003, en el que señala como cuestión de derecho, que actuó contrario a derecho el Tribunal de Primera Instancia al declarar no ha lugar la "Moción Urgente Solicitando Nulidad de la Sentencia Dictada el 7 de enero de 1997 Archivada en Autos el 27 de enero de 1997 por Razón de Fraude al Tribunal y Solicitud de Anulación de Subasta" por el fundamento de cosa juzgada.
Por su parte, Laboratorio presentó "Oposición a Expedición y/o Presentación al Recurso de Certiorari", en 6 de enero de 2003, en el que nos solicita la desestimación del recurso presentado por las siguientes razones:
• “No haber sido presentado el recurso dentro de los treinta (30) días a partir del archivo en autos copia de la notificación de la resolución, conforme a la Regla 53.1(e)(1) de Procedimiento Civil y Regla 32 de nuestro Reglamento. ”
• Que aun cuando se trata de un término de cumplimiento estricto, la parte recurrente no ha justificado la demora.
• No se acreditó la notificación del recurso a la Secretaría del Tribunal recurrido dentro del término de cuarenta y ocho (48) horas siguientes a la presentación de la solicitud ante este Tribunal, según requerido por la Regla 53.1 (b) de Procedimiento Civil.
• Incumplimiento con la Regla 54.4 de Procedimiento Civil, al no perfeccionarse el recurso por no incluir documentos indispensables según dispuesto en la Regla: "Toda moción, resolución u orden necesaria para acreditar, la interrupción y reanudación del término par apelar o presentar la solicitud de certiorari."
• Que Rodríguez no efectuó en tiempo los planteamientos de falta de jurisdicción conforme a las Reglas Procesales 10.2 y 49 de Procedimiento Civil.
• Que optó por la radicación de un pleito independiente en cuanto a la sentencia dictada en 7 de enero de 1997, el cual fue desestimado y no se solicitó reconsideración conforme a la Regla 47 de Procedimiento Civil.
• Que por lo tanto, se han convertido en asuntos que no pueden ser relitigados nuevamente.
• Que el emplazador fue bien claro en expresar que notificó a la demandada, circulando éste la palabra personalmente. A quien emplazó "prose". 
Finalmente, en 5 de marzo de 2003, Rodríguez presentó una Moción Solicitando Auxilio de la Jurisdicción, en la que nos informa entre otras cosas, lo siguiente:
• “Que fue despojada de su residencia como consecuencia de la venta judicial en pública subasta antes mencionada.
• Laboratorio Clínico Tropical dejó de pagar la hipoteca del inmueble que le fue adjudicado bajo la venta *1126judicial, que nunca le fue notificada.

• Debido al incumplimiento de pago de hipoteca del demandante-recurrido, el Banco Popular de Puerto Rico en el caso Banco Popular de Puerto Rico v. Maritza Rodríguez Ortiz; Laboratorio Clínico Tropical Incorporado, Civil Núm. ECD-2002-0529, instó el pleito sobre Cobro de Dinero y Ejecución de Hipoteca por la Vía Ordinaria ante el Tribunal de Primera Instancia, Sala Superior de Caguas. 

• El Tribunal de Caguas dictó Sentencia en el caso antes mencionado.
• Recibió por correo certificado y acuse de recibo Notificación de Edicto de Subasta en el caso Banco Popular de Puerto Rico v. Maritza Rodríguez Ortiz; Laboratorio Clínico Tropical Incorporado.
• El inmueble sujeto a dicha ejecución es el mismo inmueble que le fue despojado a la parte compareciente en el presente caso.
• Laboratorio Clínico Tropical dejó de pagar y el acreedor de la hipoteca, Banco Popular de Puerto Rico instó pleito de cobro de dinero en contra de la compareciente y del propio Laboratorio.

• Banco Popular obtuvo sentencia y ahora intenta ejecutar dicha propiedad y venderla en pública subasta.

• Rodríguez "NUEVAMENTE” está siendo despojada de su propiedad, esta vez por el acreedor de una hipoteca que ella no suscribió, que fue suscrita por Laboratorio Clínico Tropical, Inc., en virtud de un procedimiento confuso y con aires de total incorrección. ” 
II. Derecho Aplicable y Análisis
Los errores cometidos por el Tribunal de Instancia y que a continuación discutiremos, se refieren específicamente a la Sra. Maritza Rodríguez. El Sr. Carlos M. Williams no ha acudido ante nos impugnando la Sentencia de 7 de enero de 1997.
A. El emplazamiento de Maritza Rodríguez
Según surge del expediente ante nuestra consideración, Rodríguez nunca fue emplazada. El diligenciamiento del emplazamiento dirigido a su persona indica que fue emplazada en Caguas a las 8:15 de la mañana y conforme a una declaración jurada prestada por la propia Rodríguez, ésta declaró que ese día y a esa hora se encontraba en su lugar de trabajo, San Lucas Home Care, localizada en Cayey, desde las 7:00 de la mañana. Esta advino en conocimiento de la reclamación cuando encontró copia de la demanda debajo de la entrada de su residencia luego de regresar de su trabajo.
Ante una situación como la de autos, cuando se presenta la posibilidad de que una de las partes no ha sido emplazada, tiene la obligación el Tribunal de asegurarse de que el emplazamiento y su diligenciamiento hayan sido correctos.
La falta de diligenciamiento del emplazamiento, personal o por edictos, priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra. No es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente parte, aunque haya sido nombrada en el epígrafe de la demanda; hasta ese momento sólo es parte nominal. Acosta v. Martin Marieta Services, Inc. y/o ABC, Inc., 142 D.P.R. 927, 931 (1997).
Sabido es que el emplazamiento es el mecanismo procesal de notificación que se utiliza para que un *1127tribunal pueda adquirir jurisdicción sobre la persona del demandado, de forma tal que éste quede obligado por el dictamen que finalmente se emita. Véase, Márquez Resto v. Barreto Lima, 143 D.P.R. 137 (1997). "[E]l propósito principal del emplazamiento es notificar al demandado que se ha instado una acción judicial en su contra, para así garantizarle su derecho a ser oído y defenderse." Banco Central Corp. v. Capitol Plaza Inc., 135 D.P.R. 760, 763 (1994), y demás citas omitidas. Por lo tanto, el emplazamiento y el concepto de jurisdicción sobre la persona está inexorablemente atado al debido proceso de ley. El emplazamiento es el paso inaugural del debido proceso de ley que permite el ejercicio de jurisdicción por el tribunal par adjudicar los derechos del demandado. Reyes Martínez v. Oriental Federal Savings, 103 D.P.R. 15 (1993); Maldonado v. E.L.A, 119 DPR 74 (1987).
No obstante, un tribunal puede adquirir la jurisdicción "in personam" de dos manera^: utilizando los mecanismos procesales de emplazamiento provistos en la Reglas de Procedimiento Civil; o mediante la sumisión voluntaria de la parte demandada a la jurisdicción del tribunal. Márquez Resto, supra.
En el presente caso, si bien es cierto que Rodríguez no fue debidamente emplazada, lo cierto es que ésta se sometió voluntariamente a la jurisdicción del Tribunal, pues compareció al Tribunal de Primera Instancia sin hacer reserva de jurisdicción alguna. No obstante, su comparecencia ocurrió posterior a dictada la sentencia de la cual se solicita su nulidad.
Por lo tanto, el Tribunal de Instancia no adquirió jurisdicción sobre su persona hasta que compareció por primera vez en el caso de marras ante el foro judicial, o sea, en 11 de septiembre de 2002, cuando Rodriquez presentó "Moción Urgente Solicitando Nulidad de la Sentencia Dictada el 7 de 1997 Archivada en Autos el 27 de enero de 1997por razón de Fraude al Tribunal y Solicitud de Anulación de Subasta". Dicha sentencia fue dictada sin jurisdicción, constituyendo la misma nula, inoperante e ineficaz en tomo a todos los aspectos relacionados a Maritza Rodríguez.
B. Impropiedad de incluir a Maritza Rodríguez como demandada en el pleito
En el caso de marras, como se expuso anteriormente, se presentó una demanda ante el Tribunal de Primera Instancia contra el Sr. Carlos M. Williams García, Maritza Rodríguez Ortiz y la "Sociedad Legal de Gananciales por ambos compuesta", cuando ambos co-demandados no estaban casados y nunca lo han estado, a pesar de tener hijos en común. Al así hacerlo, se indujo a error al tribunal, haciéndole creer que el Sr. Williams estaba casado con Rodríguez y que, siendo la deuda producto de su trabajo, ambos eran solidariamente responsables de la misma.
Aun cuando dicho hecho fue informado al Tribunal y a la parte demandante en varias ocasiones, nada se hizo al respecto. 
Además, Laboratorio Clínico Tropical Inc. solicitó al Tribunal de Primera Instancia que expidiera orden al Registrador de la Propiedad de Puerto Rico para que anotara la orden de aseguramiento de sentencia, sobre la siguiente propiedad:

“URBANA: Solar C-21, radicado en la Urbanización Mansiones de Bairoa en el Barrio Bairoa de Caguas, con una cabida de 443.577 metros cuadrados en lindes por el Norte, en 27.975 metros con el solar número 22 del bloque C; Sur, en 28.406 metros con el solar número 20-C; Este, en 15.750 metros con la Calle número 2 de dicha urbanización y Oeste, en 2 alineaciones distintas, una de 14.302 metros y otra de 1.455 metros con terrenos de la Urbanización Bairoa Golden Gate I. Enclava una casa de concreto. Inscrita alfolio 10 del tomo 1430 de Caguas, finca número 40.503, inscripción primera. ”

Según surge del expediente, este inmueble es propiedad privativa de Rodríguez. A pesar de que no se nos *1128hizo llegar una certificación registral del referido inmueble, surge de la demanda Banco Popular de Puerto Rico v. Maritza Rodríguez Ortiz; Laboratorio Clínico Tropical Incorporado, Civil Núm. ECD2002-0529, que; para el día 22 de septiembre de 1995, Rodríguez, como propietaria del inmueble antes descrito, suscribió un pagaré a favor del mencionado banco y se constituyó hipoteca voluntaria con carácter de primera sobre el inmueble.
Por lo tanto, para la fecha de la presentación de la demanda presentada por Laboratorio Clínico Tropical Inc., así como la Moción Solicitando Aseguramiento de Sentencia, en 16 jie septiembre de 1996, aún dicho inmueble continuaba siendo privativo de Rodríguez y, no siendo ésta esposa de Willians, no podía ser objeto de embargo. Si no hay un matrimonio, no hay sociedad legal de gananciales, y si Maritza Rodríguez no era, ni es, esposa de Williams, no hay razón para tenerla como parte en la demanda por incumplimiento de contrato ni mucho menos de ejecutarle una sentencia en un bien privativo de ésta.
De lo anterior se puede colegir que el Tribunal de Primera Instancia fue objeto de fraude por parte de la parte demandante y recurrida, Laboratorio Clínico Tropical, Inc., y cometió error al permitir que Maritza Rodríguez continuara siendo parte a lo largo del proceso.
C. El Aseguramiento de Sentencia
Las Reglas de Procedimiento Civil reconocen el embargo como uno de los remedios provisionales que puede dictar un tribunal para asegurar la efectividad de una sentencia. Este remedio provisional puede ser concedido en todo pleito civil, antes o después de dictarse la sentencia, mediante solicitud de una parte interesada. Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.1.
La Regla 56.3 de Procedimiento Civil, supra, dispone que es necesario que el demandante preste una fianza suficiente antes que el tribunal emita una orden concediendo un remedio provisional en aseguramiento de sentencia. La fianza responderá, de ser necesario, de todos los daños y perjuicios que pueda causarle al demandado la concesión del repedio provisional.
En el presente caso, Laboratorio solicitó el aseguramiento se sentencia y así lo concedió el Tribunal apelado; no obstante, erró el referido foro al así hacerlo.
El estudio registral obtenido para requerir el aseguramiento y efectividad de la sentencia le demostraban a la, parte .demandante y su abogado que Carlos Williams no tenía nada que ver con la propiedad objeto del aseguramiento, propiedad privativa de Rodríguez. La sentencia y su aseguramiento se fundaron en actuaciones nulas de los demandantes, contra una parte inexistente.
Determinado el hecho de que Maritza Rodríguez no es parte en el presente pleito, por no haber sido ésta esposa de Williams al momento de instarse el mismo (ni al presente), y que el inmueble embargado era propiedad privativa de Maritza Rodríguez, no procedía el aseguramiento de sentencia, según solicitado.
D. Celebración de vista en Ausencia de la co-demandada
Según expuesto anteriormente, la vista en su fondo tuvo lugar en 17 de diciembre de 1996 y en ausencia de la co-demandada Rodríguez, sin que ésta fuera notificada de la misma. Surge de los autos originales y del expediente ante nuestra consideración, que Rodríguez NUNCA FUE NOTIFICADA de Orden alguna y, como veremos más adelante, ni de la Sentencia que dispone del presente caso.
En Puerto Rico, todo ciudadano está protegido por el derecho a un debido proceso de ley. La Constitución de Puerto Rico ha consagrado el derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como el administrativo. Este es un principio fundamental *1129de alta jerarquía en el que se garantiza que ninguna persona perderá su libertad o propiedad sin la oportunidad de ser oído. Tal derecho nos protege de las posibles arbitrariedades de los sistemas de justicia. Marrero Caratini v. Rodríguez Rodríguez 138 D.P.R. _ (1995), 95 J.T.S. 44. El debido proceso de ley en los procedimientos judiciales exige que los demandados o las personas que puedan ser afectadas o perjudicadas por dichos procedimientos sean notificados y se les conceda la oportunidad de ser oídos. Pagán v. Registrador, 62 D.P.R. 594 (1943).
En Amy v. Adm. Deporte Hípico, 116 D.P.R. 414 (1985), el Tribunal Supremo expresó que el "debido proceso de ley, encarna la esencia de nuestro sistema de justicia. Su prédica compendia elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado. Es herencia de nuestros antepasados, fruto de nuestro esfuerzo colectivo y nuestra vocación democrática de pueblo." Por otro lado, en su vertiente procesal, obliga a un procedimiento justo y equitativo que respete la dignidad del afectado. Rodríguez Rodríguez v. E.L.A., 130 D.P.R. _ (1992), 92 J.T.S. 63; Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987); López Vives v. Policía de P. R., 118 D.P.R. 219 (1987). Exige oportuna y adecuada notificación, vista, prueba robusta y convincente, derecho a ser oído, a confrontar los testigos de cargo, y a presentar prueba y argumentos en su defensa. Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982); Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791 (1973); Nogueras v. Rexach Benitez I, 141 D.P.R. _ (1996), 96 J.T.S. 112.
De lo anterior podemos colegir que tanto las vistas celebradas como la sentencia dictada en 7 de enero de 1997, infringen el debido proceso de ley, ya que se despajó a Rodríguez de su propiedad sán .haberle brindado la oportunidad de ser oída, por lo que nuevamente, la sentencia dictada es nula, inoperante e ineficaz contra Rodríguez.
E. Falta de Notificación de la Sentencia dictada en 7 de enero de 1997 y archivada en autos copia de su notificación en 21 de enero de 1997; Ineficacia de la Sentencia.
No obstante los errores cometidos que hacen de la sentencia una nula en todo lo concerniente a Maritza Rodríguez, dicho error del Tribunal aumenta con la falta de notificación de dicha sentencia a una de las partes, impropiamente demandada.
Es principio trillado del derecho que, una vez recae sentencia final y firme a favor de la parte que obtuvo el embargo, procede entonces la ejecución de dicha sentencia contra los bienes previamente embargados. Como nos señala J. Cuevas Segarra:
“La función jurisdiccional declarativa o cognitoria se desarrolla mediante el proceso declarativo o cognitorio, que encuentra su culminación en la sentencia. En muchos casos; la función jurisdiccional de declaración o cognitoria cumple su fin de tutela jurídica con .ese pronunciamiento, como sucede en la mayoría de los casos de sentencias mero-declarativas o declarativas puras y de sentencias constitutivas. Pero lo más frecuente es que la declaración o pronunciamiento judicial contengan el mandato de acomodar la realidad exterior a lo que la decisión establece como justo; tal es el caso de las sentencias de condena o condenatorias. Esta acomodación de la realidad al mandato judicial no se produce automáticamente, sino que requiere una ulterior actividad procesal y a la misma se le llama ejecución.” Leonardo Prieto-Castro y Ferrandiz, Derecho Procesal Civil, 2d. ed; Madrid; Ed. Tecnos, 1974, Vol. II, pág. 157. J. Cuevas Segarra, Práctica Procesal Puertorriqueña: Procedimiento Civil, San Juan, Publicaciones J.T.S., 1988, Vol. II, Cap. VIII, pág. 275.
Sobre este particular dispone la Regla 51.1 de las Reglas de Procedimiento Civil, supra:

“La parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ser firme la.misma... ”.

*1130El Tribunal Supremo señala que lo que constituye propiamente una "sentencia final” es la parte dispositiva de ésta, aquélla donde se adjudican y determinan las controversias del caso. Donde se definen los derechos de las partes sin dejar nada para determinación futura; más aún, es cualquier dictamen del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse o solicitarse revisión. Pueblo v. Hernández Maldonado, 129 D.P.R. 472 (1991); Cortés Román v. E.L.A., 106 D.P.R. 504 (1977); Andino v. Fajardo Sugar Co., 82 D.P.R. 85 (1961); Bermúdez v. Ortiz, 80 D.P.R. 707 (1958). A manera complementaria, la sentencia se hace firme desde que expira el término para apelar o solicitar revisión sin que se haya atacado la misma.
Una vez se satisfacen los requisitos anteriormente mencionados y se registra y archiva en autos copia de la notificación, para todos los efectos estamos ante una sentencia parcial final y comenzarán a correr los términos dispuestos en las Reglas de Procedimiento Civil para las mociones y recursos post-sentencia. (Citas Omitidas) U.S. Fire Insurance Company v. Autoridad de Energía Eléctrica, Op. de 13 de septiembre de 2000, 2000 J.T.S. 146, a la pág. 92.
Nuestro ordenamiento procesal civil prescribe que: “[...] La sentencia no surtirá efecto hasta archivarse en autos copia de su notificación y el término para apelar empezará a correr a partir de la fecha de dicho archivo. Regla 46 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 46.
En Falcón Padilla v. Maldonado Quirós, 138 D.P.R. 983, 990 (1995), nuestro Tribunal Supremo señaló la importancia que tiene la notificación de una sentencia a todas las partes en un pleito, independientemente de que una de éstas se encuentre en rebeldía por falta de comparecencia. Además, se enfatizó sobre la importancia del archivo en autos de copia de su notificación, para que las partes puedan solicitar los remedios posteriores a la sentencia que tienen a su alcance.
Si el tribunal de instancia deja de notificar un dictamen a una de las partes, los términos para acudir mediante el recurso adecuado ante el foro apelativo no comienzan a transcurrir, para ninguna de las partes, hasta que se notifique a todas las partes en el pleito. Un recurso ante el foro apelativo sin que el tribunal de instancia haya notificado a todas las partes en el pleito su sentencia, resulta prematuro. Rosario Bermúdez, et al. v. Hospital General Menonita, Inc., et al., opinión de 28 de agosto de 2001, 2001 J.T.S. 126, pág. 83.
El recurso presentado antes de que sea notificada formalmente por escrito la sentencia o resolución a todas las partes, resulta prematuro. Empress Hotel, Inc. v. Acosta Robles, opinión de 8 de agosto de 2000, 2000 J.T.S. 49, pág. 792. Nuestro más alto foro ha expresado que un recurso prematuro, "sencillamente adolece del grave e insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre". Juliá Padró v. Vidal, opinión de 14 de febrero de 2001, 2001 J.T.S. 18, pág. 846.
Un error oficinesco imputable a la secretaría de un tribunal, y la necesidad de subsanarlo mediante la emisión de una ulterior notificación enmendada de sentencia, no puede generar la anomalía de crear dos términos apelativos jurisdiccionales, con las consabidas ventajas y desventajas que ello significa [para las partes]. A fin de cuentas, sobre una misma sentencia no pueden haber válidamente, con fechas distintas, dos (2) archivos en autos de la copia de su notificación. Rodríguez Mora v. García Lloréns, 147 D.P.R. 305, 309-310 (1998)
De lo anterior, procede colegir que una orden de ejecución de sentencia no puede librarse hasta: (1) después de dictada sentencia; (2) ésta haya sido debidamente notificada a las partes; (3) se haya registrado y archivado copia de dicha notificación; (4) una vez transcurridos los términos por ley para instar un recurso de apelación o revisión. Véase, J. Cuevas Segarra, op. cit., pág. 276; Igaravídez López v. Ricci Asencio, 147 D.P.R. 1 (1998).
Según discutido, el Tribunal de Primera Instancia omitió notificar a Maritza Rodríguez tanto de las órdenes dictadas como de la sentencia. Por lo tanto, en el caso que nos ocupa, no han comenzado a discurrir los términos *1131para los procedimientos post-sentencia para todas las partes y tenemos una sentencia que a la fecha de hoy no es final y firme, y por lo tanto, ineficaz. Siendo así, todas las mociones presentadas en el aspecto de la ejecución de sentencia son de naturaleza prematura, y las órdenes, así como todo el procedimiento acontecido a partir del 7 de enero de 1997, sobre ejecución de sentencia, son NULOS y/o INOFICIOSAS, y en consecuencia, no tienen efectividad jurídica alguna.
F. Recurso presentado fuera del término de cumplimiento estricto de treinta días (30) para presentar un recurso de Certiorari
Señala Laboratorio Clínico Tropical, en su escrito en oposición a certiorari, que dicho recurso fue presentado fuera del término establecido en las Reglas de Procedimiento Civil y en nuestro Reglamento, y que aun cuando se trata de un término de cumplimiento estricto, la parte recurrente no ha justificado la demora, por lo que carecemos de jurisdicción para atender el mismo. No le asiste la razón, veamos.
Sabido es que una parte puede solicitar la revisión de una resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia mediante la presentación de un recurso de certiorari ante el Tribunal de Circuito de Apelaciones dentro de los treinta (30) días contados a partir del archivo en autos de copia de la notificación de la resolución u orden. Artículo 4.002(f) de la Ley de la Judicatura de Puerto Rico, según enmendada, 4 L.P.R.A. see. 22; Regla 32(D) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R. A. Ap. XXII-A, R. 32.
No obstante, una vez determinado que: (1) una sentencia no surtirá efecto hasta archivarse en autos copia de su notificación; (2) que el término para apelar empezará a correr a partir de la fecha de dicho archivo; (3) si el tribunal de instancia deja de notificar un dictamen a una de las partes, los términos para acudir mediante el recurso adecuado ante el foro apelativo no comienzan a transcurrir, para ninguna de las partes, hasta que se notifique a todas las partes en el pleito, es preciso colegir que el planteamiento de Laboratorio es uno, de su faz, incorrecto. No se trata de un recurso de certiorari que ha sido presentado fuera de término, pues ese término aún no ha comenzado a decursar.
Los restantes fundamentos aludidos por la parte recurrida, por los que el presente recurso no debe ser expedido, resultan inmeritorio ser discutidos. Esto como consecuencia de nuestra anterior determinación.
G, Moción Solicitando Auxilio de Jurisdicción presentado por Rodríguez, en el caso Banco Popular de Puerto Rico v. Maritza Rodríguez Ortiz; Laboratorio Clínico Tropical
Esta moción no será atendida porque la misma debió haber sido presentada ante el caso del cual se solicita paralización. O sea, bajo el caso cobro de dinero y ejecución de hipoteca por la vía ordinaria instado por el Banco Popular de Puerto Rico contra Maritza Rodríguez Ortiz y Laboratorio Clínico Tropical, Civil Núm. ECD2002-0519. No estando este caso ante nuestra consideración, estamos imposibilitados de atenderlo.
DICTAMEN
Por los fundamentos antes expuestos, se EXPIDE el auto de certiorari solicitado y se dicta sentencia para REVOCAR la resolución dictada por el Tribunal de Primera Instancia al declarar sin lugar la moción solicitando nulidad de sentencia presentada por Maritza Rodríguez y se ordena:
“Primero, se declare NULA e INOPERANTE la sentencia dictada en 7 de enero de 1997, con relación a la Sra. Maritza Rodríguez, por haber sido dictada sin jurisdicción sobre su persona, por falta de emplazamiento y deforma inconsistente con el debido proceso de ley por haberse celebrado la vista en su fondo en su ausencia, sin que ésta fuera notificada de la misma.
*1132Segundo, se declara NULA la anotación de embargo sobre la residencia privativa de la Sra. Rodríguez, debido a que no siendo ésta esposa de Williams, resulta improcedente.
Tercero, no han comenzado a discurrir los términos para los procedimientos post-sentencia para todas las partes y tenemos una sentencia que a la fecha de hoy no es final y firme, y por lo tanto, ineficaz.
Cuarto, las mociones presentas en el aspecto de la ejecución de sentencia, son de naturaleza prematura y las órdenes así como todo el procedimiento acontecido a partir del 7 de enero de 1997, sobre ejecución de sentencia son NULOS y/o INOFICIOSAS, y en consecuencia, no tienen efectividad jurídica alguna.
Quinto, se ordena al Registrador de la Propiedad, Sección Primera de Caguas, que cancele la inscripción relacionada con la fraudulenta titularidad de Laboratorio Clínico Tropical Inc.
Notifíquese por la vía ordinaria inmediatamente y adelántese la parte dispositiva de esta sentencia por teléfono y fax.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.
Aida Deana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 64
1. Hacemos uso de la palabra "supuesta", pues como veremos más adelante, los co-demandados no se encontraban casados al momento de radicarse la demanda, más aún, nunca han contraído matrimonio y como consecuencia, jamás se ha constituido una Sociedad Legal de Gananciales entre ambos. Al momento de presentada la demanda, Williams se encontraba casado con la Sra. Jenny Rosario Vega.
2. Para solicitar una medida provisional como los es el aseguramiento de sentencia y correspondiente anotación de embargo al margen de la inscripción de una propiedad, parte de la descripción registral que se le brinda al tribunal, tiene que ser notificar quién es el titular registral, y en este caso se omitió este requisito. (Véase Autos Originales, Moción Solicitando Aseguramiento de Sentencia)
3. Se trata de un impreso del tribunal, aparece Williams como demandante.
4. Nuevamente indicamos, se omite señalar quién es el titular del inmueble.
5. Como veremos más adelante, dicha Sentencia no fue notificada a Rodríguez. (Véase las notificaciones de dicha sentencia, que según se certifica fueron notificados al Ledo. Roberto Varela Muñiz, representante legal de Laboratorio Clínico Tropical y al Sr. Carlos Williams García, co-demandado)
6. A los efectos, se anejó como Exhibit 1 una Declaración Jurada prestada por Rodríguez que hace constar lo referente al emplazamiento.
7. Rodríguez incluyó como Exhibit 2 copia de la Moción presentada por Williams en 3 de octubre de 1996 informando el nombre de su esposa y el lugar de su residencia.
8. Véase Exhibit 3 de la referida Moción. Se trata de la Minuta de la vista para discusión sobre Moción Solicitando Aseguramiento de Sentencia donde consta que Williams le informó al Tribunal su preocupación de que se incluyera en la demanda a Rodríguez, toda vez que ésta no es su esposa.
9. Véase Exhibit 4 de la referida Moción. Se anejó copia de las notificaciones de la sentencia dictada en 7 de enero de 1997, declarando con lugar la demanda presentada por Laboratorio. Se trata de dos notificaciones, una dirigida al Sr. *1133Carlos Williams García y otra dirigida al Sr. Roberto Varela Muñiz, representante legal de Laboratorio.
10. A los efectos, se anejó copia de una declaración jurada prestada por el emplazador, Sr. José Stalin quien declaró haberse personado a la residencia de Williams y Rodríguez en la Calle C #21 de Mansiones de Bairoa. Que el Sr. Williams se molestó y le indicó que tenía que esperar en los.que le avisaba a “su esposa”, Sra. Maritza Rodríguez. Que luego bájó Rodríguez y los emplazó personalmente á ambos,-haciendo constar este hecho en el dorso de los emplazamientos.
11. Como parte de la moción, se incluyó copia de la referida demanda.
12. Esta alegación no es correcta, pues según la demanda del banco Popular, la deudora hipotecaria es Maritza Rodríguez, no el laboratorio. La hipoteca se dice que se constituyó en el año 1995, en que la propiedad era de Maritza Rodríguez.
13. Williams informó al Tribunal mediante moción por derecho propio presentada en 3 de octubre de 1996 y en corte abierta en 8 de octubre de 1996, que no estaba casado con Maritza Rodríguez, si no con la Sra. Jenny Rosario Vega. Siendo la acción que se ejercita una de incumplimiento con un contrato de obra y servicio, resultaba parte indispensable su verdadera sociedad legal de gananciales con su verdadera esposa como co-administradora de esa sociedad.
14. (1) concluir expresamente que no existe razón para posponer dictar sentencia sobre la reclamación; y (2) ordenar expresamente que se registre la sentencia.